UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALICE K.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-01425-MJD-TWP |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Alice K. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §423(d).

**I. Background**

On February 23, 2015, Claimant applied for DIB, alleging that she had been disabled since January 17, 2012. [Dkt. 5-5 at 2.] Claimant alleges that she is disabled due to severe depression, Raynaud's syndrome, spinal injury from a car accident, idiopathic intracranial hypertension, pernicious anemia, chronic back pain, hypothyroidism, dysthymia, and failed fusion surgery.[2] [Dkt. 5-6 at 60.] Her application was initially denied on July 30, 2015, and

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.
[2] The parties set forth Claimant's medical background in their briefs. [*See* Dkt. 7 at 8 & Dkt. 15 at 2.] Because these facts involve Claimant's confidential and otherwise sensitive medical

1

again upon reconsideration on September 21, 2015. [Dkt. 5-4 at 37.] Administrative Law Judge Tammy Whitaker ("ALJ") held a hearing on Claimant's application in July, 2017. [Dkt. 5-2 at 40.] On January 19, 2018, the ALJ issued her decision in which she determined that Claimant was not disabled. [*Id*. at 13.] The Appeals Council denied Claimant's request for review on February 11, 2019, [*id*. at 2], which made the ALJ's decision the final decision of the Commissioner. Claimant then timely filed her complaint in this Court seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can

---

information, the Court will incorporate by reference the factual background in the parties' briefs and articulate only specific facts as needed below.

perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520 (2012). Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and this Court must uphold them "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may determine only whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that there was substantial evidence supporting the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.; Gudgel v. Barnhart*, 345 F. 3d 467, 470 (7th Cir. 2003) (internal quotation marks omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochsaka v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into her reasoning" to "build an accurate and logical bridge from

the evidence to her conclusion," she need not "address every piece of evidence or testimony." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of August 12, 2014. [Dkt. 5-2 at 19.] At step two, the ALJ determined that Claimant had the following severe impairments: Degenerative Disk Disease, status post fusion and with post-laminectomy syndrome, Pseudo Tumor Cerebri and Papilledema, Episodic Tension Headaches, Raynaud's Syndrome, Hypothyroidism, Pernicious Anemia, a Major Depressive Disorder, a Dysthymic Disorder, Post-traumatic Stress Disorder, and a Generalized Anxiety Disorder. [*Id*.] At step three, however, the ALJ found that Claimant "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." [*Id*. at 20.] In making this determination, the ALJ considered Listings 1.02 (Joint Dysfunction), 1.04 (Disorders of the Spine), 2.02 (Loss of central visual acuity), 2.03 (Contraction of the visual fields in the better eye), 2.04 (Loss of visual efficiency), 7.05 (Hemolytic anemias, including sickle cell disease, thalassemia, and their variants), 9.00 (Endocrine Disorders), 11.00 (Neurological), and 11.14 (Peripheral neuropathy). [*Id*.]

The ALJ then analyzed Claimant's RFC and concluded that she had the RFC to perform light work, except:

> [Claimant] has been able to lift, push, pull, and/or carry 10 pounds occasionally and 5 pounds frequently. She has been able to sit for six hours during an eight hour workday. She has been able to stand and walk, in combination, six hours during an eight-hour workday. However, she has been limited to work that allows the individual to sit, walk, and stand alternatively, provided that, at one time, the claimant can only sit for thirty minutes, stand for thirty minutes, and walk for about a half block to one block; and further provided that the individual is not off task more than five percent of the workday in addition to regularly scheduled breaks.

> She is not able to climb ladders, ropes and scaffolds. She is able to climb ramps or stairs occasionally. She is not able to crawl. She is able to balance, kneel, or crouch occasionally. She is able to stoop occasionally, but she is not able to stoop repetitively below the level of the waist. She must have no exposure to extreme cold. She must have no concentrated exposure to extreme heat, wetness, humidity, and respiratory irritants such as fumes, odors, dusts, and gases. She must have no exposure to a work environment with a noise level rating of four (i.e. loud noises) and five (i.e. very loud noises), as those noise level ratings are defined by the Dictionary of Occupational Titles and its companion publication. She must have no exposure to vibration, unprotected heights, and dangerous machinery. She has been limited to the simple, routine, and repetitive work with "simple" defined as unskilled work. She is limited to work with only occasional interaction with the public, occasional interaction with coworkers, and occasional interaction with supervisors. She is limited to work that allows the individual to be off task five percent of the workday in addition to regularly scheduled breaks.

[*Id.* at 24.] In determining the RFC, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible so as to preclude full-time work." [*Id.* at 30.]

At step four, the ALJ found that Claimant was unable to perform her past relevant work as a laboratory technician. [*Id.*] The ALJ proceeded to step five, considering testimony from a vocational expert ("VE"), who indicated that an individual with Claimant's age, education, work experience, and RFC would be able to perform several jobs that exist in significant numbers in the national economy, such as photocopy machine operator, office helper, and cashier. [*Id.* at 31.] Based on these findings, the ALJ concluded that Claimant was not disabled. [*Id.* at 32.]

## IV. Discussion

The central issue is whether substantial evidence supports the ALJ's determination that Claimant is not disabled. Claimant asserts three arguments for reversing the ALJ's decision: (1) the ALJ failed to grant controlling weight to the relevant medical evidence; (2) the ALJ failed to account for Claimant's subjective symptoms when making her RFC determination; and (3) the

ALJ violated SSR 00–4p by failing to clarify the conflict between the VE's testimony and the DOT. These arguments are addressed, in turn, below.

   A. Relevant Medical Evidence

Claimant argues that the ALJ erred in determining the RFC by failing to analyze the medical opinions of Dr. Gibson, Dr. Cole, and Dr. Nolan. Claimant further alleges that the ALJ failed to offer an explanation for rejecting the finding of an eighty percent disability rating by the Veterans Affairs Administration ("VA"). [Dkt. 7 at 27.]

   1. *Dr. Gibson*

Claimant argues that the ALJ erred by discounting the opinion of Dr. Gibson because his opinion rested on a thorough examination and review of the medical evidence. [Dkt. 7 at 25.] On May 2012, Dr. Gibson, an independent medical examiner, examined Claimant and opined that her medication affected her cognitive abilities, and that she should not be considered for work, which required accuracy or was "in any way related to possible injury to herself or others." [Dkt. 5-23 at 19.] He further opined that Claimant had a permanent restriction in her activities that would require a sedentary classification and that she could not carry out sedentary activities on a constant basis. [Dkt. 5-23 at 19.] Dr. Gibson further opined that Claimant's symptoms would cause her to miss extended time at work. [*Id*.]

The ALJ must evaluate every opinion she receives from a medical source. 20 C.F.R. § 404.1527(a)(1)(b). The ALJ's assessment must explicitly consider all of the factors listed in 20 C.F.R. § 404.1527(c), including whether the medical professional has examined or treated the claimant. *Id.*; *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (remanding where the ALJ "said nothing regarding this required checklist of factors"). The ALJ must explain the weight given to these medical opinions, "or otherwise ensure that the discussion of the evidence

in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). Medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted). Nevertheless, the ALJ "must provide a 'logical bridge' between the evidence and his conclusions.'" *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citing *Clifford v. Apfel*, 227 F. 3d 863, 872 (7th Cir. 2000) (internal quotations omitted)).

The ALJ acknowledged that Dr. Gibson reported that Claimant was limited in her ability to lift or carry more than ten pounds, that she was prevented from bending or squatting, and that her pain medications impaired her ability to work. The following, however, was the ALJ's explanation for her rejection of Dr. Gibson's opinion:

> The [ALJ] accords some, but limited evidentiary weight to this assessment from Dr. Gibson. The assessment was rendered more than five years ago and it is not entirely consistent with later assessments. Nevertheless, the RFC does account for the limitations in Dr. Gibson's assessment except the limitation to only sedentary work. For reasons discussed below, the [ALJ] finds that the claimant is able to perform a reduced range of light work as described above in the RFC.

[Dkt. 5-2 at 27.] The ALJ failed to mention that Dr. Gibson reported that Claimant's physical limitations would remain on a permanent basis. [Dkt. 5-23 at 20.] The ALJ also cited no record evidence to support her conclusion that Dr. Gibson's opinion was inconsistent with the findings of later opinions. In fact, there is significant evidence of record that is consistent with Dr. Gibson's findings. [*See* Dkt. 5-10 at 55-56; Dkt. 5-17 at 55] (Dr. Cole's treatment notes discussing Claimant's continuing physical limitations); [Dkt. 5-22 at 13; *Id*. at 20; *Id*. at 23; *Id*. at 27] (Dr. Prince's physical reports describing Claimant's physical limitations); [(Dkt. 5-2 at 53; *Id*. at 54-56] (Claimant testifying about her inability to work due to her physical limitations).

7

The ALJ failed to address any of this testimony regarding the limitations caused by Claimant's disabling symptoms when drawing her conclusion discounting the credibility of Dr. Gibson's medical opinion.

2. *Dr. Cole*

Claimant asserts that, although the ALJ acknowledged in her RFC determination that Claimant's treating physician, Dr. Cole, opined Claimant could not stand or walk for a prolonged period, the ALJ failed to consider Dr. Cole's opinion as to Claimant's need to sit or stand at will.[3] [Dkt. 7 at 25.] Dr. Cole, an orthopedic surgeon, evaluated Claimant in 2011 and reported that she suffered from lower back pain and that she had undergone a failed spinal fusion. [Dkt. 5-10 at 63.] Dr. Cole reported in his August 2012 treatment notes that Claimant's x-ray showed an increased listhesis of L3-4 and that she had to be able to sit or stand at will. [Dkt. 5-10 at 55.] In December 2014, Dr. Cole opined that Claimant could not improve her physical limitations because they were her baseline restrictions. [Dkt. 5-17 at 10.] In May 2016, Dr. Cole opined that Claimant had reached her maximum medical improvement, and that her symptoms were static and had not changed for years. [*Id*. at 55.] The ALJ, however, gave "partial weight" to Dr. Cole's opinions on the basis that they were inconsistent with the "normal clinical findings." [Dkt. 5-2 at 27.]

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight, if supported by the medical findings and consistent with

---

[3] The Commissioner argues, since Claimant's initial filing of her application, the Social Security regulations regarding the "treating physician rule" was revised and that the ALJ complied with the new regulations when evaluating the medical opinion evidence in the record. [Dkt. 15 at 6.] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revisions to the regulations, however, do not apply to Claimant's matter because her initial application was filed on February 23, 2015. *See id*.; *see also* 20 C.F.R. §§ 404.1527 (applying previous treating physician rule to claims filed before March 27, 2017).

8

substantial evidence in the record." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and the extent of the treatment relationship, the frequency of examinations, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Moreover, the ALJ must offer good reasons for discounting the opinion of a treating physician. *Id.* at 739. "An ALJ thus may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'" *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (citing *Skarbek*, 390 F. 3d at 503 (internal quotations and citations omitted)). The ALJ must give "more weight to the medical opinion of a source who has examined [claimant] than to the medical opinion of a medical source who has not examined [her]." 20 C.F.R. § 404.1527(c)(1); *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 572-73 (7th Cir. 2017) (finding error where, without any logical explanation, the ALJ gave substantial weight to the opinions of consulting physicians, who had never examined the claimant). In this case, the ALJ failed to explain how Dr. Cole's opinion was inconsistent with other evidence in the record, or how any such evidence would have been more relevant to his medical opinion about Claimant than his own experience and observations as a specialist who had treated her since 2011.

3. *Dr. Nolan*

Claimant contends that the ALJ erred by concluding that the advice of treating psychiatrist, Brock Nolan, who recommended that Claimant engage in activities, was

inconsistent with his medical opinion that he was unable to predict when Claimant could return to work. [Dkt. 7 at 26.] In his February 2015 Initial Treatment Plan, Dr. Nolan reported that Claimant suffered from psychosocial functioning and psychiatric symptoms, including suicidal ideation and insomnia. [Dkt. 5-17 at 36.] In his September 2015 progress notes, Dr. Nolan reported that Claimant's emotional deconditioning continued. [*Id*. at 26] To help improve Claimant's psychological symptoms, Dr. Nolan encouraged Claimant to increase her activities, consider an employment search, exercise regularly, and participate in daily activities. [*Id*. at 36.] In his June 2017 Attending Physician Statement, Dr. Nolan opined that he was "unable to predict" when Claimant could return to work. [Dkt. 5-23 at 61.] The ALJ gave little weight to Dr. Nolan's opinion on that basis that it was "not consistent with the treatment notes indicating that Dr. Nolan had encouraged the claimant to increase her activities, seek employment, and engage in regular exercise," [Dkt. 5-2 at 28], and notes from Dr. Nolan's associates, which indicated that "claimant was alert, neat and clean," and that she fostered dogs and found such work to be "worthwhile." [*Id*.]

The Seventh Circuit has repeatedly stated that an ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ must not substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (noting that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). The Seventh Circuit has also repeatedly held that an ALJ must not equate a claimant's ability to perform daily activities with her ability to perform work. *Moore*, 743 F.3d at 1126; *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). The ALJ failed to address any of the

10

above evidence when discounting Dr. Nolan's opinion and failed to explain how Dr. Nolan's recommendation to increase activities to combat depression was inconsistent with the record evidence regarding Claimant's ability to work due to her disabling symptoms.[4] *See Scrogham v. Colvin*, 765 F.3d 685, 701-02 (7th Cir. 2014) (noting that it was unreasonable for the ALJ to rely upon a claimant's ability to walk because it was a form of therapy, and did not rise to the level of full-time work activity); *Carradine,* 360 F.3d 751 at 755 (noting that "[s]ince exercise [was] one of the treatments that doctors ha[d] prescribed for [claimant's] pain, and she d[id] not claim to be paralyzed, [the court] [could not] see how her being able to walk two miles [was] inconsistent with her suffering severe pain").

---

[4] The ALJ acknowledged the progress notes of Claimant's mental health therapist, Mr. Patee (referred to by the ALJ later as Dr. Nolan's associate), who reported that Claimant was alert, neat, and clean. However, the ALJ discounted Mr. Patee's opinion regarding Claimant's mental condition on the basis that he did not identify specific mental limitations and because his opinion was not consistent with "other more credible assessments from acceptable medical sources" and was "not supported by objective clinical findings." [Dkt. 5-2 at 28.] SSR 16-3p requires the ALJ to consider the "entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2016 WL 1119029, at *4. In evaluating medical opinion evidence, "acceptable medical sources" include licensed physicians and psychologists, while "other sources" include nurse practitioners and physician assistants. *Fedorenko v. Colvin*, No. 3:16–CV–00202, 2017 WL 3700346, at *4 (N.D. Ind. Aug. 28, 2017). Although opinions from other sources are not entitled to controlling weight like acceptable medical sources and cannot establish the existence of a medically determinable impairment, they can be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* (quoting SSR 06-3p, 2006 WL 2329939, at *2). In the June 2017 Attending Physician Statement, Mr. Patee opined that Claimant was unable to resume work in the foreseeable future due to her disabling symptoms. [Dkt. 5-23 at 58.] Mr. Patee further opined that Claimant's symptoms of depression would increase without behavioral therapy and treatment. The Court also notes that the ALJ failed to address Mr. Patee's opinion regarding Claimant's symptoms of depression when discussing Dr. Nolan's associate's findings.

4. *The Veterans Administration*

Claimant asserts that the ALJ erred by failing to explain her findings that the VA's assessment deserved little weight. [Dkt. 7 at 27.] Claimant is a veteran and received a disability rating from the VA in 2011, which concluded that Claimant was eighty percent disabled. The VA reported that Claimant's total combined disability rating of eighty percent met "the schedular requirements for entitlement to individual unemployability." [Dkt. 5-13 at 22.] However, the VA did not classify Claimant as "unemployable" because she was an active employee who received disability payments from Eli Lilly and Co., and that "the evidence of record [did] not indicate whether or not, [Claimant] will return to work once [her] disability pay end[ed]." [*Id.* at 23.]

Under SSR 06-03P, even though the ALJ is not "bound by disability decisions by other governmental and nongovernmental agencies," the ALJ "should explain the consideration given to these decisions." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). The Seventh Circuit has directed the ALJ to provide a proper explanation about what weight was given to other government agencies in arriving at the RFC determination. *See Hall v. Colvin*, 778 F.3d 688 (7th Cir. 2015) (noting that the ALJ's failure to properly weigh the VA's disability determination that claimant was seventy percent disabled, and thus totally unemployable and entitled to full benefits, required remand); *Bird v. Berryhill*, 847 F.3d 911 (7th Cir. 2017) (remanding for further proceedings, rather than award benefits, because the VA's decision was not available to the ALJ, and the record included evidence conflicting with the finding of disability). In this case, the ALJ concluded that the VA disability rating was "considered and given only a little weight due to differing standard[s] to determine disability." [Dkt. 5-2 at 29.] The ALJ's failure to properly analyze and weigh the VA's disability determination was a further oversight.

Based on the above, the Court concludes that the ALJ failed to consider and analyze all of the relevant medical evidence including the medical opinions of Dr. Gibson, Dr. Cole, and Dr. Nolan, as well as the VA's disability determination, when arriving at the RFC determination. This failure requires remand.

B. Claimant's Subjective Symptoms

Claimant contends that the ALJ erred when she concluded that Claimant's allegations regarding her subjective symptoms were inconsistent with the medical advice Claimant received to exercise and increase her activities. [Dkt. 7 at 28.] Claimant testified that she could not work because of her limited ability to stand and sit for a prolonged time, symptoms of depression and fatigue, muscle pain, and inability to focus. [Dkt. 5-2 at 54.] The ALJ gave the following reasons for rejecting Claimant's statements:

> [T]hey are inconsistent because the reports from Dr. Cole and the consultative examiner indicate that the claimant has normal gait, normal strength, including grip strength. Although the consultative examiner reported that the claimant had limited range of motion of the spine, Dr. Cole indicated that she has normal range of motion. [sic] is no evidence of muscle atrophy. As noted above, it would be reasonable to see signs of atrophy or decreased strength in an individual who has had the limitations alleged by the claimant for over five years. The claimant's primary care physician has encouraged the claimant to exercise regularly.

[Dkt. 5-2 at 27.] The ALJ must not disregard a claimant's testimony about the intensity of pain, its persistence, and the limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms that a claimant alleges. S.S.R. 16-3p. The Seventh Circuit has specified that the ALJ is not in the business of impeaching a claimant's character. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Instead, the ALJ must resolve any "discrepancies between the objective evidence and self-reports." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The critical inquiry is whether the ALJ's credibility determination is "reasoned and supported," and it may be only overturned if it is

13

"patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal quotations omitted). A credibility determination is patently wrong if it "lacks any explanation or support." *Id.* While the ALJ may consider a claimant's daily activities, the Seventh Circuit has repeatedly admonished the ALJ to not place "undue weight" on those activities. *Moss*, 555 F.3d at 562; *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (explaining that the pressure, nature of the work, flexibility in the use of time, and the various aspects of a working environment often differ dramatically between the home and the place of employment); *Gentle v. Barnhart*, 430 F.3d 865, 867-88 (7th Cir. 2005) (noting that the ALJ's reliance on claimant's minimal daily activities warrant further discussion on this issue).

The ALJ correctly noted that Claimant's physicians encouraged her to exercise and walk. However, as noted above, it unreasonable for the ALJ to rely on a physician's recommendation to exercise as an indication that Claimant could work a full-time job. *See Scrogham v. Colvin*, 765 F.3d 685, 701-02 (7th Cir. 2014); *Carradine*, 360 F.3d 751 at 763. The ALJ failed to address that Dr. Cole also had reported that Claimant had permanent restrictions to be able to "sit and stand at will," and that she could not lift more than 10 pounds, bend, or twist. [Dkt. 5-10 at 55.] In the 2017 Physical Report, Claimant reported that her daily goals were to cook an entire meal without pain, to walk her dog for more extended periods, to manage housework, to gain strength, and to increase her overall confidence. [Dkt. 5-22 at 19.] During Claimant's Psychological Evaluation and Mental Status Examination in 2014, Claimant reported that pain medications had impacted her cognitive abilities and caused problems at work. She further reported that her daily living activities had decreased, she had limited her socialization, and that she spent most of her time alone with her dogs. [Dkt. 5-14 at 3.] She further reported that she ate once or twice a day and left the house only when her parents visited. [*Id.*] Claimant stated

14

that she spent several days in bed, had suicidal thoughts, and suffered from severe pain. [*Id.*] Claimant testified that she suffered from frequent pain in her spine that caused her symptoms of pain that burned, throbbed, and nagged, and that she had a sharp pain that ran down her legs. [Dkt. 5-2 at 52.] The ALJ failed to address any of the above testimony regarding the limitations of Claimant's physical activities when drawing her conclusion regarding Claimant's subjective symptoms and her ability to function in an eight-hour workday environment. This should be remedied on remand, and the ALJ should ensure that her analysis of Claimant's subjective symptoms complies with the requirements of SSR 16-3p.

    C. <u>Hypothetical to Vocational Expert</u>

Claimant argues that the ALJ violated Social Security Rule 00–4p by failing to require the VE to explain an apparent conflict with the DOT, and that the VE's flawed testimony does not satisfy the Commissioner's burden at step five to demonstrate that Claimant could perform light work despite her limitations. [Dkt. 7 at 23.] Under SSR 00–4p, the ALJ has an "affirmative responsibility" to ask whether the vocational expert's evidence "conflicts with information provided in the DOT" before relying on this evidence to support determination. SSR 00–4p at 4; *See Prochaska*, 454 F.3d 731 at 735.

During the hearing, the ALJ asked the VE a hypothetical question regarding a person who had an RFC to perform work at:

> light exertion level, such that they could lift, carry, push and pull 20 pounds occasionally and ten pounds frequently. The person could stand and walk in combination for a total of six hours out of an eight hour workday and they can sit for a total of six hours out of an eight hour workday. They would need work that would allow them to sit or stand or walk alternatively provided that at one time they could sit for 30 minutes. They could stand for 30 minutes and they could walk about a half block to one block. The person could never climb ladders, ropes or scaffolds. They could occasionally climb a ramp or stair. They could do occasional balancing. They could do occasional stooping, but never repetitively below the waist. They could do occasional kneeling. Just occasional crouching. Never any crawling. They

15

would need a work environment with no exposure to extreme cold. They would need a work environment with no concentrated exposure to extreme heat, wetness or humidity or respiratory irritants like fumes, odors, dust or gases. They would need work with no exposure to a noise level rating of four for very loud noise or let me rephrase that. They would need work with no exposure to a noise level rating of four for loud noise or five for very loud noise as those noise level ratings are defined in the Dictionary of Occupational Titles or its companion publication. Would need work with no exposure to vibration. Would need work with no exposure to unprotected heights or dangerous machinery. A person would be limited to simple, routine and repetitive work with that term simple defined as unskilled work. They would need work that would allow them to be off task 5% of the workday in addition to regularly scheduled breaks. They would need work with only occasional interaction with the public, coworkers and supervisors. In addition, with respect to that sit/stand option, sit, stand and walk alternatively that [the ALJ] described earlier where [the ALJ] indicated their limitations on how long they could sit, stand or walk at one time, [the ALJ] would further add that provided they would not be off task greater than 5% of the workday in addition to regularly scheduled breaks. Could that person perform any of the claimant's past work within this hypothetical?

[Dkt. 5-2 at 65-66.] The VE testified that with those limitations, Claimant's past work was precluded. The ALJ proceeded to ask the VE whether "they could do any other work in a competitive work economy within the hypothetical?" [*Id*. at 67.] The VE testified that there were light exertion jobs that were available such as photocopy machine operator, office helper, and cashier. [*Id*.] The ALJ then proceeded to ask the VE whether these jobs could still be performed, if in the hypothetical, the person could:

> [L]ift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, if [the ALJ] eliminated that and instead they could lift, carry, push and pull ten pounds occasionally and five pounds frequently, but everything else that [the ALJ] gave [the VE] before in this hypothetical stayed the same.

[Dkt. 5-2 at 69.] The VE testified that with these limitations, a person could still perform the same light work noted above and that his opinion was consistent with the DOT. [*Id*. at 70.] Claimant argues that the VE's testimony was not, in fact, consistent with the DOT, because the jobs in question are classified as light work, and light work requires more lifting, walking, and standing than the ALJ found Claimant to be capable of. On remand, to the extent it remains

16

relevant after the above issues are addressed, the ALJ shall determine whether the VE's testimony is, in fact, consistent with the DOT and, if it is not, determine whether the VE can provide a reasonable explanation for the discrepancy.

### V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings.

SO ORDERED.

Dated: 20 NOV 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.